### GROVES v. WHITTENBURG et al.

### No. 4942.

Court of Civil Appeals of Texas. Amarillo.

Oct. 24, 1938.

W. T. Brothers, of Amarillo, for appellant.

Sanders & Scott and Howard F. Saunders, all of Amarillo, for appellees.

FOLLEY, Justice.

This suit was filed by Vina G. Groves, joined pro forma by her second husband, Roy S. Groves, against J. A. Whittenburg, Jr., Roy R. Whittenburg and S. B. Whittenburg, as independent executors of the estate of their father, George A. Whittenburg, deceased, for alleged damages in the sum of $100,000 resulting to Vina G. Groves by reason of an alleged breach of an express contract by George A. Whittenburg, and, in the alternative, asking recovery in such sum for alleged breach of an implied contract, for services rendered the said George A. Whittenburg during his lifetime by Vina G. Groves.

The trial court sustained a general demurrer to the petition of Vina G. Groves, and also sustained a special exception asserting that such petition showed on its face that the claims of Vina G. Groves as therein alleged were barred by the two year statute of limitations. Such action by the trial court is assigned as error by the appellant, Vina G. Groves.

The pleadings of the appellant are exceedingly long and tedious and the facts alleged are somewhat involved and conflicting. However, upon a fair interpretation of the pleadings as a whole, we think they reveal the facts as hereinafter set out.

The appellant met the deceased, George A. Whittenburg, in May, 1931, at her apartment in Amarillo, Texas, just after she had separated from her first husband in New Mexico, although not divorced from him at the time. She informed the deceased that she was temporarily separated from such husband. The deceased made love to the appellant upon this first visit and made some overtures of marriage. Three or four days later he paid her a second visit at which time he renewed his professions of love and offer of marriage, representing that he was a very rich man and that he could furnish her with all the comforts and luxuries of life if she would come and live with him. He also begged her to obtain a divorce from her husband and offered to furnish the money for the expenses in connection therewith, which he later did. She accepted such offer and it was agreed between them that they should be married as soon as she might obtain a divorce.

Upon inquiry she learned from a lawyer that she would have to live in Texas a year before becoming eligible for a divorce

or return to her former home in New Mexico for the divorce. The deceased objected to her returning to New Mexico for fear she might become reconciled to her husband and proposed that he rent an apartment in Amarillo where they might live together until such time as a divorce might be obtained, during which time she might take care of him when he was sick or suffering from the effects of intoxication. The appellant resisted such proposal upon the ground that the deceased might die before a divorce could be obtained, whereupon the deceased assured her that a few hundred thousand dollars would mean nothing to him or to his estate and that in the event of his death that she would be amply provided for in a sum not less than one hundred thousand dollars. Upon such assurance she acceded to his proposals and they began living together some time in September, 1931.

Such relationship existed between the two for some three years until the death of the deceased in September, 1934. The appellant, however, secured her divorce from her first husband on August 15, 1932, whereupon the appellant insisted upon their immediate marriage, but the deceased dissented on the ground that his father, J. A. Whittenburg, Sr., since deceased, objected violently to such marriage. Notwithstanding such objections and the continued postponement of the marriage by the deceased upon such grounds, their relationship continued upon the further assurances of the deceased that he would marry the appellant or provide for her in his will in the event of his death. During all this time the appellant and the deceased cohabited as husband and wife and engaged in illicit intercourse. The appellant insisted that she yielded to the deceased solely because of the marriage engagement and that such illicit relations were incident to deceased's request and his prior promises of marriage. That such immoral conduct was contemplated by the parties at the outset of their relationships and exercised habitually during their three year period of association is evident from the pleadings as a whole.

The will of the deceased was probated in Hutchinson County, Texas, in October, 1934, the present suit not having been filed until March, 1937. In the meantime the appellant was married to Roy S. Groves in September, 1935.

Under the above allegations we think the trial court committed no error in sustaining the general demurrer of the appellees to the petition of the appellant. In our opinion any fair construction of the pleadings would warrant the conclusion that the parties to the alleged contract designed for themselves an unholy and adulterous companionship. Such unorthodox arrangement, conceived in iniquity and shorn of all the elements of common decency, was wholly immoral, against public policy and violated all the finer impulses of the marriage relationship. The courts never lend themselves to the enforcement of such nefarious contracts and undertakings which are in defiance of public morals, in violation of law and repugnant to public policy. 13 C.J. 460; West et al. v. Grand Lodge of the Ancient Order of United Workmen of Texas, 14 Tex.Civ. App. 471, 37 S.W. 966, writ denied; Levin v. Levin et al., 253 App.Div. 758, 300 N.Y. S. 1042; Willis v. Willis, 48 Wyo. 403, 49 P.2d 670; Baxter v. Wilburn, 172 Md. 160, 190 A. 773.

Having sustained the trial court's action on the general demurrer to appellant's petition, the question of limitations becomes immaterial.

The judgment is affirmed.